Linda JOHNSON, Plaintiff,

v.

Cissy CHAPMAN, Lee Allison Ledbetter, Chris Rogers, Carlyn Nadeau, Judy Trigo, and United States of America, Defendants.

No. 3:03–CV–3.

United States District Court,
E.D. Tennessee,
At Knoxville.

July 22, 2004.

**896**

David H Dunaway, Law Office of David H. Dunaway & Associates, LaFollette, TN, for Plaintiff.

Edward G Phillips, John E Winters, Kramer, Rayson, Leake, Rodgers & Morgan, LLP, Cynthia F Davidson, Pamela G Steele, Suzanne H Bauknight, U S Department of Justice, Office of U S Attorney, Knoxville, TN, for Defendants.

## MEMORANDUM OPINION

VARLAN, District Judge.

### I. Introduction

Plaintiff, former Executive Director of the Lenoir City Housing Authority ("LCHA"), filed her complaint on November 12, 2002 in the Loudon County Circuit Court [*see* Doc. 1]. In her complaint, plaintiff alleges tortious interference with a contract and employment relationship and violations of specific Tennessee statutes by several defendants [*see id.*]. The complaint specifically states that "[t]he Defendant Vicky Martin, is a citizen and resident of Knox County, Tennessee, and is also believed to be the Program Center Coordinator for the Office of Public Housing, U.S. Department of Housing and Urban Development ("HUD")" [*see id.*]. According to plaintiff, Martin told the LCHA on numerous occasions that she would take over the operation if plaintiff was not terminated [*see id.*]. Therefore, plaintiff alleges that Martin's actions were beyond the course and scope of her employment [*see id.*].

On February 20, 2003, the Court issued a memorandum and order directing Martin to show cause why this case should not be remanded to state court for lack of subject matter jurisdiction based upon the failure to meet the requirements of removal pursuant to 28 U.S.C. § 1442 and the requirements of certification pursuant to 28 U.S.C. § 2679(d)(2) [*see* Doc. 9]. Thereafter, the United States of America ("U.S.") filed a motion to supplement the record [Doc. 11] on February 27, 2003 and a response to order to show cause and motion for an order acknowledging substitution [Doc. 12] on March 3, 2003.

The Court issued an memorandum and order dated September 4, 2003 finding that the U.S. had properly removed this case from the Loudon County Circuit Court pursuant to 28 U.S.C. § 2679(d)(2) based upon the certification that Martin "was acting within the scope of her office and employment at the time of the incident out of which the claims of plaintiff's Complaint arose" [*see* Doc. 18; *see also* Doc. 19, attachment 14]. However, in light of

plaintiff filing an affidavit indicating that Martin was not acting in the scope of her employment, the issue of proper substitution of the U.S. for Martin was subject to judicial review [*see* Doc. 18, *citing Singleton v. United States of America,* 277 F.3d 864, 870 (6th Cir.2002) ]. Therefore, the Court directed the U.S. to present any evidence in support of its certification for purposes of substitution [*see* Doc. 18].

On September 26, 2003, the U.S. filed a response to memorandum and order [Doc. 23] and a declaration of Vicky Ann Martin with accompanying exhibits [Doc. 24]. Martin's declaration states that she was acting within the scope of her employment in relation to the actions taken with respect to plaintiff [*see* Doc. 24]. Plaintiff filed a response to the initial motion for order acknowledging substitution [Doc. 14] and a reply to the response to memorandum and order [Doc. 25], maintaining that the U.S.'s certification and Martin's declaration are insufficient to overcome plaintiff's allegations that Martin was acting outside the course and scope of her employment.

The motion for an order acknowledging substitution [Doc. 12] filed by the U.S. is ripe for determination. The Court has carefully considered all relevant pleadings and the entire record in light of the applicable law. For the reasons set forth herein, the U.S. will be substituted for Vicky Martin as a named defendant.

## II. Analysis

■ Pursuant to 28 U.S.C. 2679(d)(2), the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." *See Singleton,* 277 F.3d at 870. However, the certification is subject to judicial review for purposes of substitution. *Id.* In discussing whether a substitution is proper, the *Singleton* Court has outlined the following standard:

We have held that "[t]he Attorney General's certification provides *prima facie* evidence that the employee was acting within the scope of employment." Thus, to contest the propriety of substitution, the plaintiff must produce evidence that demonstrates that the employee was not acting in the scope of employment. If the plaintiff produces such evidence, the government must then produce evidentiary support for its certification.

*Id.* 870–71 (citation omitted).

■ The *Singleton* Court has acknowledged that "[w]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Id.* at 870 (citation omitted). Under Tennessee law, the test for determining whether an employee is acting within the scope of employment provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

*Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.,* 840 S.W.2d 933, 938 (Tenn.Ct.App.1992)(*quoting Restatement (Second) of Agency* § 228 (1957)); *see also Carpenter v. Laxton,* 96 F.3d 1448 (Table), 1996 WL 499099, *2 (6th Cir.1996).

■ The U.S. presented the declaration of Martin with accompanying exhibits to provide the following evidence in support of the certification at issue. As Program Center Coordinator for HUD's Office of Public Housing, Martin was responsible for oversight of the LCHA. Specifically, she was responsible for coordination and completion of a coordinated review of management, occupancy audit, and facilities management of the LCHA during 2001, including a review of expenditures from certain funds received by the LCHA through the McKinney Act Refunding Agreement between HUD and LCHA.

As a result of this review, HUD determined that significant sums expended by the LCHA were not in accordance with applicable regulations and specific guidance provided to LCHA. Following this determination, Art Wasson, the Director of the Office of Public Housing and supervisor to Martin, issued a letter dated November 1, 2001, notifying the LCHA's Board of Commissioners that it was in default of the McKinney Act Refunding Agreement. In the letter, Wasson noted the responsibility of plaintiff as the LCHA Executive Director to "[a]ssure that activities of the [LCHA] are within federal, state, and local laws, regulations, policies and procedures" and commented further that "[h]ad this provision of the contract been met, the [LCHA] would not be in the tenuous position it currently finds itself" [see Doc. 24, exhibit 2].

On November 14, 2001, at the direction of supervisor Wasson, Martin issued a final report of the coordinated review of the LCHA management to the Board of Commissioners. The final report contained HUD's findings and recommendations and required a written response from LCHA by a certain date. As part of the findings, the final report listed multiple deficiencies of plaintiff as the Executive Director for LCHA. Based upon all of these facts,

Martin's declaration concludes that "[a]ll actions which [she] took during 2001 concerning the LCHA and its executive director were taken in the ordinary course of performing [her] duties as the Program Center Coordinator responsible for oversight of the LCHA and in accordance with direction from [her] immediate supervisor" [see Doc. 24]. Therefore, the U.S. asserts that Martin was acting within the scope of her employment under Tennessee law.

In opposition to the U.S.'s position, plaintiff first asserts that Martin is sued in her individual capacity, not in her official capacity. Next, plaintiff maintains that the U.S. has overlooked the allegations in paragraph 14 of the complaint that Martin's actions "were beyond the course and scope of her employment as the Program Center Coordinator," as well as the allegations in paragraph 13 of the complaint that Martin "individually, intentionally, and without justification procured the Plaintiff's discharge when she had neither a legitimate reason nor legitimate excuse for so doing, and her motivation was actuated through her own vindictiveness and malice for which ... Martin had a personal agenda by which she, her friends, and her associates would profit" [see Docs. 14 and 25]. Since the U.S.'s certification and Martin's declaration fail to state that Martin had the responsibility or right to interfere with or terminate plaintiff's contractual relationship with the LCHA, plaintiff contends that the evidence presented by the U.S. is insufficient to overcome her allegations that Martin was acting outside the course and scope of her employment.

After carefully reviewing the entire record, the Court concludes that plaintiff has failed to provide evidence from which it could reasonably be found that Martin was acting outside the scope of her employment at the time of the alleged tortious conduct. Plaintiff merely makes concluso-

ry allegations that Martin acted outside the scope of her employment. The Court specifically finds that Martin's reports about plaintiff as the Executive Director of LCHA, whether written or oral, were "of the kind [she was] employed to perform," "occurr[ed] substantially within the authorized time and space limits," and were "actuated, at least in part, by a purpose to serve" her federal employer. *See Tennessee Farmers Mut. Ins. Co.,* 840 S.W.2d at 938. Therefore, the Court concludes that Martin was acting within the scope of her employment at all relevant times.

Plaintiff's allegations that Martin acted with vindictiveness and malice are not enough to overcome substitution where, even if true, Martin's actions appear to have been taken within her authority as a federal employee during the course of her employment. *See RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1143–44 (6th Cir.1996) (citations omitted)("[t]he mere fact that a federal employee's actions may have been unlawful or in derogation of the plaintiff's contractual rights is not enough, by itself, to find that the employee's actions were outside his authority;" "[w]here … a plaintiff in his complaint pleads conduct within an individual's scope of employment and merely alleges bad or personal motive, summary dismissal of the scope challenge is warranted;" and "[t]he scope of employment issue does not focus on the alleged wrongful nature of the employee's actions; rather, the issue is the actions complained of and whether those actions are 'so divergent that [their] very character severs the relationship of employer and employee' "). Plaintiff has not alleged any conduct by Martin that could be characterized as so divergent that it would sever the employer-employee relationship.

## III. Conclusion

For the reasons stated herein, the motion for an order acknowledging substitution [Doc. 12] will be **GRANTED** and the U.S. will be substituted for Vicky Martin as a named defendant. The parties will be **DIRECTED** to make this substitution apparent in the caption of all future pleadings. In addition, the motion for enlargement of time [Doc. 28] will be **GRANTED** such that the U.S. will have ten (10) days from entry of this Court's order confirming substitution to respond to plaintiff's complaint.

Order accordingly.