*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THOMAS A. DOLAN,

    *Plaintiff-Appellant,*

  *v.*

UNITED STATES OF AMERICA, et al.,

    *Defendants-Appellees.*

No. 07-5369

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 06-00208—Thomas W. Phillips, District Judge.

Submitted: November 30, 2007

Decided and Filed: January 28, 2008

Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** James L. Harris, LAW OFFICES, Nashville, Tennessee, for Appellant. Jenny Lynn Smith, ASSISTANT UNITED STATES ATTORNEY, Birmingham, Alabama, for Appellees.

---

## OPINION

---

  BERTELSMAN, District Judge. Plaintiff/Appellant, Thomas A. Dolan, appeals from the dismissal of tort claims against the United States and *Bivens* and common law conspiracy claims against individual defendants, Guy Blackwell, Randall Kizer, and Bruce Poston. The district court filed a memorandum opinion which may be found at 2007 WL 784351. After careful review, we **AFFIRM.**

  The case involves several procedural and jurisdictional issues.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

As stated by the district court, the factual and procedural background of the case is as follows:[1]

Plaintiff is an engineer who held a faculty position with the University of Tennessee Center for Industrial Services. During the course of his employment there, Plaintiff began working with Frank Prasil, an inventor who had developed a process for the recycling of ink. With Plaintiff's assistance, Prasil applied for and received a $390,000 research and development grant from the U.S. Department of Energy.

As one of the requirements for the grant, Prasil needed to obtain matching funds from an independent source. He approached the East Tennessee Banking Corporation (ETB) and received a commitment for the necessary funding. Prasil and Plaintiff informed the Tennessee Department of Environment and Conservation, which was partnered with the Department of Energy in the grant program, of ETB's funding commitment. A short time later, however, ETB notified Plaintiff that it was withdrawing its financial support.

Apparently, Prasil was able to obtain the needed funding from another source. In the meantime, ETB allegedly formed Environmental Ink, Inc., a company devoted to the development of processes that are similar to those invented by Prasil. When Prasil and Plaintiff learned of Environmental Ink, they attempted to force the company to cease and desist from exploiting Prasil's research.

Bruce Poston, the President of both ETB and Environmental Ink, sent a twenty-four page letter to the Department of Energy asking for a formal investigation into the grant given to Prasil. The letter outlined alleged irregularities in the grant application and questioned the use of grant funds. Poston supposedly implicated Plaintiff as the author of the most misleading information in the grant application. Copies of the letter were sent to Plaintiff's employer and to the Tennessee Department of Environment and Conservation. Plaintiff left his position at the University of Tennessee and Prasil's grant was withdrawn.

The U.S. Department of Justice conducted an investigation to determine whether there was any truth in Poston's allegations. In August 2001, Plaintiff and Prasil were charged with making false statements to the Department of Energy and mail fraud. *United States v. Thomas A. Dolan*, No. 3:01-CR-115 (E.D. Tenn.)(J. Varlan). The case was delayed until 2004, due to health problems of Plaintiff's co-defendant, Prasil. In early May 2004, the United States began preparation for trial. It was discovered that the evidence establishing the mailing and venue for the false statements could not be found by state officials. Without the evidence, the United States was unable to prove the allegations in the indictment beyond a reasonable doubt, and the charges against Plaintiff were dropped.

On May 26, 2005, Plaintiff, through counsel, initiated an action pursuant to 42 U.S.C. § 1983 in the United States District Court [for the Middle District of Tennessee] against the United States of America; Guy Blackwell, the federal prosecutor who brought the charges against the petitioner; Randall Kizer, a special investigator for the U.S. Department of Justice; and Bruce Poston, the President of ETB and Environmental Ink. The complaint alleged seven claims for relief:

> 1.    Blackwell suppressed exculpatory evidence in violation of the plaintiff's right to due process;

---

[1]Appellant substantially accepts this statement by the district court.

2.    Blackwell denied the plaintiff due process when he knowingly fabricated evidence;

3.    Kizer denied the plaintiff due process when he knowingly fabricated evidence;

4.    Blackwell, Kizer and Poston "formed an agreement to fabricate evidence" against the plaintiff in an effort to deny him due process;

5.    Kizer violated the plaintiff's Fourth Amendment right to be free from unlawful seizure when he maliciously fabricated evidence which was used as a basis for establishing probable cause to bring criminal charges;

6.    Blackwell violated the plaintiff's Fourth Amendment right to be free from unlawful seizure when he maliciously fabricated evidence which was used for establishing probable cause to bring criminal charges; and

7.    The defendants knowingly conspired to violate the plaintiff's Sixth Amendment right to a fair trial by suppressing favorable and requested evidence from the plaintiff.

Defendants filed a motion to dismiss the action in the Middle District. Judge Trauger granted the motion on February 13, 2006, finding that because the alleged misconduct occurred in the Eastern District of Tennessee, the Middle District was not the proper venue for resolution of Plaintiff's claims.

The present civil suit was filed by Plaintiff on June 2, 2006, and it replicates the previous civil suit filed against the defendants in the Middle District.

The defendants, United States of America, Guy Blackwell, and Randall Kizer, moved pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure for an order dismissing Plaintiff's claims against the United States and the claims against Blackwell and Kizer or, in the alternative, for summary judgment in defendants' favor on the basis of (1) lack of subject matter jurisdiction, (2) failure to state a claim upon which relief can be granted, (3) failure to meet traditional pleading standards, (4) statute of limitations, (5) failure to personally serve the individual defendants, (6) absolute immunity, (7) qualified immunity, and (8) substitution of the United States for any common law claims.

A time line will be of assistance in understanding the issues.

August 7, 2001:      Plaintiff was indicted in the Eastern District of Tennessee.

May 28, 2004:        Indictment voluntarily dismissed by United States.

May 26, 2005:        Suit filed in Middle District of Tennessee.

February 13, 2006:   Suit dismissed without prejudice in Middle District for improper venue.

June 2, 2006:        This action filed in Eastern District of Tennessee.

June 7, 2006:        Summons issued against United States, Blackwell and Kizer to be served by certified mail at "United States Department of Justice 800

Market Street, Suite 211, Knoxville Tenn." The Attorney General was also served with the summons on the United States.

June 27, 2006: Individual defendants purportedly served by certified mail at above address. Certified mail receipts signed by an employee in the United States Attorney's Office, but were not signed by the individual defendants.

August 21, 2006: Scope of employment certifications filed.

August 21, 2006: Motions to dismiss or in the alternative for summary judgment filed by United States on behalf of itself and Blackwell and Kizer.

September 8, 2006: Response and affidavit of Plaintiff filed.

March 13, 2007: Motion to dismiss United States and individual federal defendants granted and judgment entered.

April 13, 2007: Defendant Poston also dismissed.

This timely appeal followed.

The district court dismissed the claims against the United States for lack of jurisdiction, because Plaintiff had not complied with the Federal Tort Claims Act. 28 U.S.C. § 2675(a). It dismissed the 42 U.S.C. § 1983 claims because such claims must be based on state action. It dismissed the 42 U.S.C. § 1985 claim on the basis of sovereign immunity and because Plaintiff made no allegation that the alleged conspiracy was motivated by a "class-based animus." It dismissed the common law claims against the individual federal defendants because of the certifications that these defendants were acting in the course of their employment with regard to all allegations of the complaint. Under the Westfall Act, the United States was substituted as a defendant instead of these individuals. Finally, it dismissed the *Bivens* claims against the individual federal defendants because the statute of limitations had run. Plaintiff challenges only the final two rulings in his brief herein, and only they need to be discussed.

## II. ANALYSIS

### A. The Westfall Certification

The district court's discussion on this issue was succinct and to the point:

Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"), the United States is to be substituted in a civil action for money damages brought against a federal employee who is alleged to have committed a common law tort while acting within the scope of his employment. See 28 U.S.C. § 2679(b)(1); *Osborn v. Haley*, 127 S. Ct. 881, 887-88 (2007); *RMI Titanium Co. v. Westinghouse Elec. Corp*, 78 F.3d 1125, 1142 (6th Cir. 2000). The Westfall Act provides:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all

references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1); *RMI Titanium*, 78 F.3d at 1143 (6th Cir. 2000). The Attorney General has delegated to the United States Attorney the authority to provide such certification. 28 C.F.R. § 15.4; *Id.* Upon the United States Attorney's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the FTCA. *Osborn*, 127 S. Ct. at 888.

The United States Attorney for the Eastern District of Tennessee, pursuant to 28 U.S.C. § 2679(d)(1) and 28 C.F.R. 15.4, has certified that Blackwell and Kizer were both acting within the scope of their offices and employment at the time of the incidents complained of by plaintiff. Therefore, pursuant to the provisions of 28 U.S.C. § 2679(d)(1), all state common law claims alleged in plaintiff's complaint are deemed claims against the United States, and the United States is substituted as the sole party defendant respecting such common law tort claims. Accordingly, all state common law claims against defendants Blackwell and Kizer will be dismissed.

The federal two-year statute of limitations, discussed above, bars any cognizable tort claims under the FTCA, and sovereign immunity bars any claims non-cognizable under the FTCA. Accordingly, any state common law claims against the United States will be dismissed for lack of subject matter jurisdiction.

*Dolan v. United States*, No. 3:06-CV-208, 2007 WL 784351, at *5-*6 (E.D. Tenn. Mar. 13, 2007).

Plaintiff argues that the summary judgment standard should apply to our review of this issue and that the affidavit filed by him, alleging (albeit in a conclusory fashion) that the individual federal defendants had fabricated evidence, created "genuine issues of material fact." *See* Fed. R. Civ. P. 56.

As pointed out in the government's brief, however, although the accuracy of the certification is reviewable by the district court in which it is filed, the summary judgment standard is not the one to be utilized. Rather,

Under the Westfall Act, the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d) (2). The Supreme Court has held, though, that the Attorney General's scope-of-employment certification is subject to judicial review for purposes of substitution. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, 115 S. Ct. 2227, 132 L. Ed. 2d 375 (1995); *see also Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir. 1990). We have stated that "[w]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). However, "when a district court is reviewing a certification question under the Westfall Act, it must identify and resolve disputed issues of fact necessary to its decision before entering the order." *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir. 1995); *see also Heuton v. Anderson*, 75 F.3d 357, 361 (8th Cir. 1996); *Melo v. Hafer*, 13 F.3d 736, 747 (3rd Cir. 1994); *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994), *cert. denied*, 515 U.S. 1145, 115 S. Ct. 2584, 132 L. Ed. 2d 833 (1995). We review de novo both the district court's conclusions of law, *Coleman v. United States*, 91 F.3d 820, 823 (6th

Cir. 1996), and the district court's application of the law to the facts, *RMI*, 78 F.3d at 1135.

*Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002) (footnotes omitted).

Further, if the certification is well taken, that is, if the defendant federal employee was acting in the scope of his or her employment, substitution of the United States as defendant is appropriate and the district court "must assess the plaintiff's claims pursuant to the Federal Tort Claims Act (FTCA)." *Id.* at n. 5. That is, if the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction. *Rector v. United States*, 243 Fed. Appx. 976, 979 (6th Cir. 2007); *Singleton*, 277 F.3d at 872; *Blakely v. United States*, 276 F.3d 853, 865 (6th Cir. 2002).

The issue of whether the certification is correct, i.e., whether the federal employee was acting within the scope of his or her employment, is governed by the agency law of the forum state. *Singleton*, 277 F.3d at 870; *Rector,* 243 Fed. Appx. at 978-79. The district court must resolve any issues of fact and may hold an evidentiary hearing, if necessary. *Singleton*, 277 F.3d at 870-71. However, the certification "provides *prima facie* evidence that the employee was acting within the scope of employment." *Id.* The burden is on the plaintiff to "produce evidence that demonstrates that the employee was not acting in the scope of employment." *Id.* at 871. Although the district court may hold an evidentiary hearing, no hearing is needed "where even if the plaintiff's assertions were true, the complaint allegations establish that the employee was acting within the scope of his/her employment." *Id.*

In *Roberts v. United States*, 191 Fed. Appx. 338 (6th Cir.), *cert. denied*, 127 S. Ct. 683 (2006), we had occasion to apply the agency law of Tennessee to a similar Westfall Act situation. There, the plaintiff alleged that co-worker federal employees had engaged in a conspiracy against him to cause him to be fired from a Veterans' Hospital. Personal bias and malice were alleged.

We held that Restatement (Second) of Agency § 228 provided the applicable tests for scope of employment:

> Under Tennessee law, an employee acts within the scope of his employment if the employee's conduct meets the test set forth in the Restatement (Second) of Agency § 228 (1957):
>
> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

*Roberts*, 191 Fed. Appx. at 342 (citing *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 938 (Tenn. Ct. App. 1992)).

Applying these criteria, we held that the Westfall certification was valid. We observed that "Tennessee law generally measures the scope of employment not by 'the motive of the servant, but whether that which he did was something his employment contemplated, and something which if he should do it lawfully he might do in his employer's name.'" *Id*. at 343 (quoting *Hall Grocery Co.*

*v. Wall*, 13 Tenn. App. 203, 208 (1930)). Our subsequent discussion controls the case now before us:

> Under Tennessee law, an employee can act within the scope of his employment even when committing wanton or willful torts against another[.]
>
> The rule recognized in all the recent cases . . . is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them.

*Id.* at 343.

Here, the individual federal defendants were employed by the federal government to investigate and prosecute cases. As the above discussion shows, even if they acted improperly or maliciously in investigating or prosecuting Plaintiff, as Plaintiff alleges, they were still within the scope of their employment. This would be the case, even if Plaintiff's factual showing were true. Therefore, the Westfall Act certification was proper and the district court properly dismissed the common law claims against individual federal defendants as being governed by the Federal Tort Claims Act.

### B.  The Statute of Limitations has Expired on the *Bivens* Claims[2]

As the time line, *supra*, shows, Plaintiff's first suit in the Middle District of Tennessee was dismissed other than on the merits on February 13, 2006. Under Tennessee's savings statute, Plaintiff had one year to "commence a new action." Tenn. Code. Ann. § 28-1-105(a).[3]

Under Tennessee Rule of Civil Procedure 3, timely service of process is essential to the commencement of an action such that the statute of limitations is satisfied.

**Rule 3.  Commencement of Action**
All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. *If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations*

---

[2]A *Bivens* claim, named after a landmark 1971 Supreme Court decision that established it, is a claim for money for injuries sustained as a result of a federal agent's violation of the constitution while acting under his federal authority. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397 (1971)*; Salt Lick Bancorp v. F.D.I.C.*, 187 Fed. Appx. 428, 440 (6th Cir. 2006).

[3]The parties agree that the Tennessee Rules of Civil Procedure apply. Appellant does not cite Federal Rule of Civil Procedure 3 or 4, but the defendants point out that Federal Rules 4(i)(2)(B) and 4(c) require compliance with state law, if a federal employee sued individually is not served personally or by leaving the process with a responsible individual at the defendant's dwelling, house or usual place of abode. Nor does the Appellant refer in any way to Federal Rule of Civil Procedure 4(m) and he has, therefore, waived any argument that might have been made under that sub-rule. *See Hargrave v. McKee*, No. 05-1536, 2007 WL 2818339, *9 (6th Cir. Sept. 27, 2007) (quoting *United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999)); *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 852-53 (6th Cir. 2007).

unless the plaintiff continues the action by obtaining issuance of new process *within one year from issuance of the previous process* or, if no process is issued, within one year of the filing of the complaint.

Tenn. R. Civ. P. 3. (emphasis added).

Thus, it was necessary under Tennessee law for Plaintiff to accomplish valid service of process in this action within 90 days of February 13, 2006 to satisfy the statute, since no further process was issued at any time up to the dismissal of the case.

Plaintiff agrees with these propositions but relies on the purported service of process by certified mail on the individual federal defendants on June 7, 2006. We agree with the defendants, however, that such purported service was invalid. Neither of the individual defendants worked at the office to which the certified mail was sent.[4] Tennessee Rule of Civil Procedure 4.04(10) authorizes service on a defendant by certified mail, if plaintiff or his agent sends "postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified return receipt mail to the defendant." Tenn. R. Civ. P. 4.04(10). Here, although the certified mail was addressed by name to the defendants, it was sent to an office where they did not even work, and the receipt was signed by a person whose authority is not shown in the record. Therefore, the service was invalid. *Massey v. Hess*, No. 1:05-CV-249, 2006 WL 2370205, at *2 (E.D. Tenn. Aug. 14, 2006) (extensive discussion).

Therefore, there has never been any personal service on the individual federal defendants and, pursuant to Tennessee Rule of Civil Procedure 3, *supra*, since process was "not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of the statute of limitations unless the plaintiff continue[d] the action by obtaining issuance of new process within one year from issuance of the previous process." This was not done and the statute of limitations ran.

Therefore, the judgment of the District Court is **AFFIRMED**.

---

[4] Plaintiff does not rebut the defendants' statement that neither defendant worked at the office to which the summons were sent.